**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

ROBERT W. SEIDEN, Esq. Receiver for
SOUTHERN CHINA LIVESTOCK, INC.,

Plaintiff,

vs.

SCHWARTZ, LEVITSKY, AND FELDMAN
LLP,

Defendant.

---------------------------------------------------------- x

Case No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Robert W. Seiden, Esq. Receiver for Southern China Livestock, Inc. files this Original Complaint (the "Complaint") against Defendant Schwartz, Levitsky, and Feldman LLP ("Defendant" or "SLF"), and alleges as follows:

## I.     PREFACE

1.     This action is filed to recover damages for the Southern China Livestock, Inc. receivership estate from Defendant based on its participation in a reverse takeover orchestrated by the former directors of Southern China Livestock, Inc. and others that injured the companies comprising Southern China Livestock, Inc.

## II.     PARTIES

2.     Plaintiff Robert W. Seiden, Esq. for Southern China Livestock, Inc. was appointed by the Court of Chancery in the State of Delaware, Case no. 8851-VCN, in the

action *In re Southern China Livestock, Inc. Litigation* (the "Receiver" or "Plaintiff"). (*See* Exhibit A)

3.      Defendant Schwartz, Levitsky, and Feldman is an accounting firm based in Toronto, Canada. Under Federal Rules of Civil Procedure 4(h), SLF may be served with process by mailing a true copy of the citation with an attached copy of this Complaint, by registered or certified mail, return-receipt requested, to SLF's registered agent in New York.

### III.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332, and 1367 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and the parties are not citizens of the same state.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391. Southern China Livestock, Inc. common stock was traded under the symbol SCLI on the NASDAQ, which is located in the Southern District of New York.

### IV.      FACTUAL BACKGROUND

**A.      SCLI Corporation Formation and Lineage**

6.      On September 27, 2007, Expedite 4, Inc. ("Expedite") was incorporated in Delaware. On July 28, 2009, Southern China Livestock International, Inc. ("International") was incorporated in Nevada as a holding company for Jiangxi Yingtan Huaxin Livestock, Ltd. ("JYHL"). JYHL is a registered company in the People's Republic of China. JYHL's interest in International was held through Mayson International Services Limited (a British Virgin Islands company), Mayson Enterprise Services Limited (a British Virgin Islands company), Mayson Holdings Limited (a Hong Kong company), and Beijing Huaxin Tianying Livestock Technology, Ltd. ("BHTLT") (a China company). Within this company structure are seven (7) subsidiary companies in China that operate nineteen (19) hog farms.

7.     On March 29, 2010, Expedite acquired International through a reverse takeover transaction ("RTO"). In the RTO, Expedite acquired 100% of International's shares in exchange for 99.7% of Expedite's common stock. As a result, International owned all but 1,500 shares of Expedite.

8.     On July 9, 2010, Expedite filed for a change of name to Southern China Livestock, Inc. ("SCLI")

**B.     RTO & PPM**

9.     In 2010, International announced the RTO with Expedite. This began SLCI's efforts to raise $10,000,000.00 through a private placement financing memorandum ("PPM"). Rodman and Renshaw LLC and Newbridge Securities Corporation served as the placement agents.

10.    As detailed in the PPM, the money raised was to be used to acquire hog farms in China and develop a fertilizer business. In May of 2010, SCLI filed a registration statement with the Securities Exchange Commission ("SEC"). However, as early as August 15, 2011, this registration statement was withdrawn.

11.    Within the PPM, SCLI states that audit papers were prepared under generally accepted accounting principles in the United States. Although the PPM did include a "Risk Factors" section, the PPM did not actually disclose the numerous risks that existed at the time of the PPM.

**C.     Schwartz Levitsky Feldman LLP**

12.    Defendant is an accounting firm based in Canada, with offices in Toronto and Montreal. Defendant is registered with the Public Company Accounting Oversight Board ("PCAOB") in the United States.

13.    At the time of the RTO, SLF replaced Gately & Associates, LLC, as SCLI's

independent registered accounting firm. Defendant was retained to express an opinion on SCLI's consolidated financials based on its audit of SCLI.

**D.     Defendant's Audit Opinion & the RTO**

14.     As part of the RTO, a PCAOB-registered auditor must conduct an independent audit and submit result in an audit opinion. Specifically, the audit must adhere to standards of the PCAOB and Generally Accepted Auditing Standards ("GAAS").

15.     Accordingly, Defendant was hired to conduct SCLI's audit and submit the required audit opinion (the "Audit Opinion"). Defendant marketed themselves as experts in China-related businesses: having "extensive experience in doing financial due diligence of Chinese companies." (*See* www.slfa.ca) In fact, Defendant claims that a "number of the companies that Defendant has represented have successfully listed on the North American Securities Exchanges." *Id.*

16.     SCLI hired Defendant to replace its current auditor Gately & Associates, LLC. Defendant agreed to conduct an audit of SCLI's finances between 2008 and September 30, 2009. Upon information and belief, Defendant had full knowledge that this audit was performed in connection with the RTO and would be a part of the PPM.

17.     Based on Defendant's own assertions, Defendant were experts in this type of audit and knew that investors would rely on its opinion. The SCLI audit was not Defendant's first audit of a Chinese company involved in a RTO; nor Defendant's first involvement in fraud in an RTO. Specifically, Defendant's audit clients China Automotive Systems, Inc. and HQ Sustainable Maritime Industries, Inc. were both determined to be committing fraud while Defendant served as their audit counsel. In fact, Defendant ended up as a defendant in another lawsuit before this Court due to their involvement in the fraud committed by China Automotive Systems, Inc. See Nancy George, et al. v. China Automotive Systems, Inc., et al.;

Case 1:11-cv-07533-KBY in the United States District Court Southern District of New York.

18.     In producing the Audit Opinion, Defendant audited "the consolidated balance sheets" and "the consolidated states of income and comprehensive income, stockholders' equity and cash flows." *See* Exhibit B, Defendant's Audit Opinion. Defendant made clear that it is "[o]ur responsibility [] to express an opinion on these consolidated financial statements based on our audits." *Id.*

19.     The Audit Opinion was purportedly done in accordance with GAAS and PCAOB standards. As Defendant's admit in the Audit Opinion, according to the PCAOB standards, Defendant was to "plan and perform an audit to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement." *Id.* Specifically, Defendant described the audit process as "examining, on a test basis, evidence supporting the amounts and disclosures in the consolidated financial statements." *Id.* In addition, Defendant stated it was "assessing principles used and significant estimates made by management, as well as evaluate the overall financial statement presentation." *Id.*

20.     Upon completion of the audit, Defendant concluded "[w]e believe that our audits provide a reasonable basis for our opinion." *Id.* Finally, Defendant proclaimed – with full knowledge of its inclusion in the PPM and the investors' reliance – that "[i]n our opinion, these consolidated financial states referred to above present fairly, in all material respects, the financial position of Southern China Livestock International Inc." *Id.*

E.     **Investment Money Raised**

21.     Based on the strength of the 2010 Audit Opinion, SCLI went on to raise a substantial amount of money from investors. In fact, the PPM raised approximately $7,594,965.00. Upon information and belief, throughout this process, Defendant had

5

knowledge of the money that was raised and its contribution to the success of the PPM.

**F.     SCLI's 10-K**

22.     Surprising to many investors, soon after investor-money was raised, SCLI's 2010 10-K was released and showed a different picture of the company than portrayed in the PPM and Defendant's Audit Opinion. *See* Exhibit C, SCLI 10-K. An amended 10-K was subsequently filed.   *See* Exhibit D, Amended SCLI 10-K. These SCLI 10-K's reveals the following, which was completely absent in Defendant's Audit Opinion:

- Serious risks due to the cyclical nature of livestock market (both in the price of the livestock and the price of feed);
- SCLI management has no experience in operating a publicly traded company;
- Extensive capital requirements for the expansion into manufacturing fertilizer;
- Substantial competition from larger livestock companies;
- Limited nature of SCLI's operating history;
- Impossibility of implementing required internal controls based on the cash-nature of the business;
- Potential risk of losing key employees;
- Admission that SCLI would likely not be able to meet SEC requirements;
- Failure to properly withhold up to $4.4 million in taxes;
- Threat of disease and the extreme impact disease would have on the business;
- PRC's power to regulate prices; and
- Licensing and permit failures.

SLF intentionally and recklessly withheld these risk factors from potential investors. *Id.*

**G.     Audit Failures**

23.     Defendant failed in several respects to meet the standards set by the PCAOB and GAAS. Among other failures, Defendant failed in planning and execution of the audit. In addition, Defendant failed to appropriately address the complexity of an international business and the pending RTO. Moreover, Defendant knowingly did not address the real risk factors that were later revealed in the Form 10-K.

24.     At a basic level, Defendant relied too heavily on third parties located in China and neglected to perform the appropriate work itself. With a company that is based on production from nineteen (19) rural farms, upon information and belief, Defendant did not make a single on-site visit. Similarly, in the China Automotive Systems, Inc. suit, it is alleged that Defendant was not licensed to conduct an audit in the PRC. Defendant's actions fall far outside GAAP and PCAOB standards.

## V.     STATUTE OF LIMITATIONS DEFENSES

**A.     Discovery Rule / Inquiry Notice / Equitable Tolling**

25.     The Receiver was appointed by the Court of Chancery in the State of Delaware. Plaintiff did not discover, and could not with the exercise of reasonable diligence have discovered until more recently, Defendant's participation in the SCLI's activities and the true nature of the injury suffered. Moreover, Defendant's wrongful acts were inherently undiscoverable. Plaintiff also asserts the doctrine of equitable tolling.

## VI.     CAUSES OF ACTION

26.     For each of the following causes of action, Plaintiff incorporates by reference and reasserts the allegations above as if fully set forth below.

**COUNT 1:     Breach of Contract**

27.     Defendant contracted with SCLI to perform audit functions and produce and audit opinion. SCLI and its investors relied on Defendant to perform under the contract.

28.     Defendant wrongfully breached the contract established during the course of its business relationship with SCLI by not providing a reliable audit opinion. Instead, Defendant produced the false Audit Opinion that knowingly portrayed SCLI in a false light.

29.     Defendant's actions directly injured SCLI and therefore the SCLI receivership estate with a monetary loss greater than the Court's jurisdictional limits.

**COUNT 2:      Negligence/Gross Negligence**

30.      Defendant owed a duty to SCLI that required Defendant to exercise the ordinary care, skill, or diligence that a certified public accountant of ordinary skill and knowledge commonly possesses.

31.      Defendant's negligent acts or omissions breached that duty to SCLI when Defendant knowingly provided the false Audit Opinion. Defendant's breach of this duty proximately caused an injury to SCLI and therefore the SCLI receivership estate by causing the misappropriation of millions of dollars from the SCLI receivership estate. As a result of Defendant's actions, SCLI and therefore the SCLI receivership estate suffered millions of dollars in damages.  Defendant's aggravated conduct is apparent through conducting an international audit without the proper licensing and without even the slightest diligence before offering its Audit Opinion constituted gross negligence. Accordingly, Plaintiff is entitled to recover exemplary damages in excess of the minimum jurisdictional limits of this Court.

**COUNT 3:      Aiding, Abetting, or Participation in Breaches of Fiduciary Duties**

32.      The directors and officers of SCLI owed fiduciary duties to SCLI and therefore owed fiduciary duties to the SCLI receivership estate. These directors and officers breached their fiduciary duties by causing SCLI to engage in an illegal scheme that enabled the misappropriation of millions of dollars from SCLI and the SCLI receivership estate through the RTO, causing SCLI and the SCLI receivership estate to suffer millions of dollars of losses.

33.      Defendant knowingly aided, abetted, and/or participated in these breaches of fiduciary duties through issuing the Audit Opinion. Defendant knew that the directors and officers of SCLI owed fiduciary duties to their respective investors, and Defendant was aware that these directors and officers were breaching their fiduciary duties through the RTO.

34.     Defendant also knew that it was aiding, abetting, and/or participating in these breaches of fiduciary duties by the conduct alleged herein. The directors' and officers' fiduciary breaches and Defendant's participation in these breaches were a proximate cause of actual damages to SCLI in the amount of millions of dollars.

35.     Defendant knew or should have known that its aiding, abetting, and/or participation in these breaches of fiduciary duties would result in extraordinary harm to SCLI and therefore SCLI receivership estate. Accordingly, Plaintiff is entitled to recover exemplary damages in excess of the minimum jurisdictional limits of this Court.

**COUNT 4:    Aiding, Abetting, or Participation in a Fraudulent Scheme**

36.     By its conduct described herein, Defendant knowingly aided, abetted, and/or participated with the various directors and officers of SCLI in a fraudulent scheme against its investors.

37.     In particular, Defendant's services substantially assisted a fraudulent scheme that further assisted SCLI in misappropriating millions of dollars from the SCLI receivership estate, causing SCLI and the SCLI receivership estate to suffer millions of dollars of losses.

38.     As a result of this conduct, Defendant is directly liable for fraud, and its actions, in combination with the actions of its SCLI's directors and officers are a proximate cause of actual damages to Plaintiff in the amount of millions of dollars.

**COUNT 5:     Fraudulent Conveyance Under the Uniform Fraudulent Transfer Act –
                Constructive Fraud**

39.     During the time Defendant was retained by SCLI, Defendant received fees and transfers from SCLI. Defendant did not provide reasonably equivalent value in exchange for any of the transfers.

40.     Moreover, the transfers to Defendant were made without fair consideration in

that Defendant, through its failings in the Audit Opinion, provided nothing of value in return for the transfers.

41.     At the time of the transfers to Defendant, SCLI had outstanding debts, including a sizeable tax debt. Upon information and belief, SCLI's outstanding debts were at a level beyond SCLI's ability to pay them as they became due. Accordingly, upon information and belief, SCLI was insolvent at the time it made transfers to Defendant.

42.     Pursuant to the Uniform Fraudulent Transfer Act, the Receiver, on behalf of the receivership estate, may avoid the transfers to Defendant. The transferred property, its proceeds, or substitute property of equivalent value constitutes receivership property.

43.     Therefore, Plaintiff is entitled to recover from SLF the full amount of any fraudulent transfers that third parties received from SCLI, either directly or indirectly. Plaintiff is also entitled to recover attorneys' fees and costs for its claims against Defendant. As a result, Plaintiff requests reasonable attorneys' fees and costs for prosecuting its fraudulent-transfer claims against Defendant.

**COUNT 6:     Unjust Enrichment**

44.     Defendant received fees from SCLI without providing any value in return. Defendant obtained these fees at the expense and to the detriment of the SCLI receivership estate.

45.     In obtaining fees this way from SCLI, Defendant unjustly enriched itself. Accordingly, Defendant should be required to make restitution to the receivership estate of the fees and other property it received from SCLI.

### VII.   ACTUAL DAMAGES

46.     The SCLI receivership estate has suffered the loss of millions of dollars as a

result of the diversion and misappropriation of funds from SCLI and millions of dollars of losses in the RTO that were contrary to representations made by the SCLI to investor regarding how their money would be invested – all under Defendant's watch as the auditor.

47.     This loss was proximately caused by Defendant's wrongful conduct and its conjunction with SCLI and others as described herein. Additionally, Defendant is liable for all damages caused to the SCLI receivership estate and during the time period when Defendant participated in concealing the true nature of SCLI.

48.     In addition, Plaintiff is entitled to recover its just and reasonable attorneys' fees, subject to Court approval, for it would be inequitable not to award such fees to Plaintiff. Plaintiff has retained the undersigned attorneys and has agreed to pay them reasonable fees for their work.

## VIII.  PUNITIVE DAMAGES

49.     Plaintiff's injuries resulted from Defendants' gross negligence, and malice, which entitles the Receiver to exemplary damages in an amount necessary to punish Defendant, and to deter similar conduct by others in the future.

## IX.     CONDITIONS PRECEDENT

50.     All conditions precedent to filing this Complaint has been met.

## X.      JURY DEMAND

51.     The Plaintiff demands a trial by jury.

## XI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment in their favor and against Defendant as follows:

A.      An order declaring Defendant breached the contract with Plaintiff, have aided and abetted the breach of fiduciary duties, have aided and abetted a fraudulent scheme, have orchestrated a fraudulent conveyance, and have been unjustly enriched;

B.      An order directing Defendant to pay Plaintiff monetary, compensatory, consequential, liquidated, and punitive damages;

C.      Attorney fees and litigation expenses, to the extent permitted by contract or law;

D.      Pre- and post-judgment interest, to the extent provided by contract or law; and

E.      Such other and further relief, in both law and equity, as the Court deems appropriate.

Dated:  July 15, 2016                    Respectfully submitted,

                                         **EDWARD STONE LAW P.C.**

                                         */s/ Edward S. Stone*
                                         _____
                                         Edward Stone
                                         NY State Bar No. 2259589
                                         99 Madison Avenue, Suite 5008
                                         New York, NY 10016
                                         eddie@edwardstonelaw.com

                                         **VANACOUR PERKINS PLLC**

                                         Kevin Perkins
                                         State Bar No. 24053420
                                         Jason Vanacour
                                         State Bar No. 24073250
                                         14675 Midway Road, Suite 100
                                         Addison, Texas 75001
                                         Phone: (972) 646-3999
                                         Fax: (972) 692-0509

                                         *Pro Hac Vice to be Filed*

                                         **COUNSEL FOR THE RECEIVER**