UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT W. SEIDEN, ESQ., *receiver for Southern China Livestock, Inc.*,

Plaintiff,

v.

SCHWARTZ, LEVITSKY, and FELDMAN LLP,

Defendant.

---

No. 16-CV-5666 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Robert W. Seiden, as receiver for Southern China Livestock, Inc. ("SCLI") brings this diversity action against SCLI's former auditor, Defendant Schwartz, Levitsky, and Feldman LLP ("SLF"). SLF moves to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper venue under Rule 12(b)(3), and insufficient service of process under Rule 12(b)(5). For the reasons set forth below, SLF's motion to dismiss for lack of personal jurisdiction is granted.

## BACKROUND[1]

Southern China Livestock International, Inc. ("International") was a Nevada corporation that acted as a holding company for, among other entities, seven companies operating nineteen

---

[1] These facts are drawn principally from the complaint. *See* Compl. (Dkt. 1). The Court also relies on affidavits of the parties or their counsel, which it may do in considering a Rule 12(b)(2) motion to dismiss. *See, e.g., Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013); *AmTrust Fin. Servs., Inc. v. Lacchini*, No. 16-CV-2575 (PAE), 2017 WL 728262, at *1 n.1 (S.D.N.Y. Feb. 23, 2017).

hog farms in China. *See* Compl. ¶ 6. SLF is an accounting firm organized under the laws of Canada, with its principal place of business in Toronto. *See* Aff. of Gerald Goldberg ¶ 2 (Dkt. 18). SLF does not maintain any offices in the United States. *Id.* ¶ 3.

On November 25, 2009, SLF entered into an agreement to audit the financial statements of International and other affiliated entities for their 2008 and 2009 fiscal years. *See id.* ¶ 9. On January 28, 2010, SLF delivered an audit opinion in its offices in Toronto. *See id.* ¶ 14; Compl. Ex. B (audit opinion). In the audit opinion, SLF concluded that the consolidated financial statements "present fairly, in all material respects, the financial position of Southern China Livestock International Inc. as of September 30, 2009 and 2008." Compl. Ex. B at 2.

In 2010, Expedite 4, Inc. ("Expedite"), a Delaware corporation, acquired International through a reverse takeover transaction and changed the combined company's name to Southern China Livestock, Inc. ("SCLI"). *See* Compl. ¶¶ 7–8. SCLI attempted to raise $10 million through a private placement. *See id.* ¶ 9. In connection with the private placement, SCLI prepared a private placement financing memorandum ("PPM"), which represented that SCLI's "audit papers were prepared under generally accepted accounting principles in the United States." *Id.* ¶¶ 9, 11. SCLI ultimately raised approximately $7,594,965 from investors. *See id.* ¶ 21. At least some of these investors reside in New York, where they received promotional material and made their investments. *See* Decl. of Robert W. Seiden ¶ 2 (Dkt. 23-1).

Soon after the private placement, SCLI filed a 10-K Annual Report with the United States Securities and Exchange Commission. Compl. ¶ 22, Ex. C. The 10-K "surpris[ed]" investors by showing a "different picture of the company than portrayed in the PPM and Defendant's Audit Opinion." *Id.* ¶ 22. Specifically, the 10-K and amended 10-K reports identified a number of risk factors that were, according to the complaint, "completely absent" from the audit opinion. *Id.*

2

In an action commenced in the Court of Chancery of the State of Delaware, Robert W. Seiden was appointed receiver of SCLI. *See* Seiden Decl. ¶ 1. As SCLI's receiver, Seiden filed this action against SLF, alleging, *inter alia*, that SLF made material misstatements and omissions in its audit opinion. The complaint asserts six claims: (1) breach of contract, (2) negligence/gross negligence, (3) aiding, abetting, or participation in breaches of fiduciary duties, (4) aiding, abetting, or participation in a fraudulent scheme, (5) fraudulent conveyance, and (6) unjust enrichment. *See* Compl. ¶¶ 27–45.

On October 19, 2016, SLF filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), and insufficient service of process under Rule 12(b)(5). *See* Dkt. 16. On November 14, 2016, Seiden filed an opposition to SLF's motion. *See* Pl.'s Opp'n Mem. (Dkt. 23). On November 30, 2016, SLF filed a reply. *See* Def.'s Reply Mem. (Dkt. 26).

## LEGAL STANDARD

On a Rule 12(b)(2) motion to dismiss, "the plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (alteration omitted) (citation omitted). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Where an evidentiary hearing on the motion has not been held, "the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting

3

materials." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). In considering a Rule 12(b)(2) motion to dismiss, a court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)).

"District courts resolving issues of personal jurisdiction must . . . engage in a two-part analysis." *Bank Brussels*, 171 F.3d at 784. First, they must "look to the law of the forum state to determine whether personal jurisdiction will lie." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). Second, they must determine "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam).

## DISCUSSION

### A. General Jurisdiction

Seiden first claims that the Court has general jurisdiction over SLF. *See* Pl.'s Opp'n Mem. at 8–9. In New York, general jurisdiction is governed by Section 301 of the New York Civil Practice Law and Rules. "Section 301 preserves the common law notion that a court may exercise general jurisdiction over a nondomiciliary defendant if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798–99 (S.D.N.Y. 2015) (internal quotation marks omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016) (summary order). The Due Process Clause, however, permits a court to assert general jurisdiction over foreign corporations only "when their affiliations with the State are so 'continuous and systematic' as to

4

render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Only "in an exceptional case," the Supreme Court has explained, will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business . . . be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[I]n our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business—the 'paradigm' cases."). Here, SLF's "formal place of incorporation" and "principal place of business" are both in Canada, and it maintains no offices in New York. *See* Goldberg Aff. ¶¶ 2–3. While Seiden claims that SLF has "done business with multiple New York companies," Pl.'s Opp'n Mem. at 8, he has made no allegations that SLF's New York operations are "so substantial and of such a nature as to render [it] at home" in New York, *Daimler* 134 S. Ct. at 761 n.19. Accordingly, the Court lacks general jurisdiction over SLF. *See, e.g., Thackurdeen*, 130 F. Supp. 3d at 799 (finding that the court lacked general personal jurisdiction over two defendants under Section 301 where neither defendant "is incorporated or has its principal place of operation in New York and Plaintiffs have failed to explain why this represents an exceptional case to the general rule").

### B. Specific Jurisdiction

Seiden argues that the Court nonetheless has specific jurisdiction over SLF under Section 302(a)(3)(ii), which extends New York's long-arm jurisdiction to those who "commit[] a tortious act without the state causing injury to person or property within the state." C.P.L.R. § 302(a)(3); *see* Pl.'s Opp'n Mem. at 9–11. "The New York Court of Appeals has identified five elements for personal jurisdiction under section 302(a)(3)(ii): the plaintiff must show that '(1) the defendant

5

committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce.'" *Miller Inv. Tr. v. Xiangchi Chen*, 967 F. Supp. 2d 686, 694 (S.D.N.Y. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159, 162 (N.Y. 2011)); *see also LaMarca v. Pak-Mor Mfg. Co.*, 735 N.E.2d 883, 886 (N.Y. 2000).

Seiden has plainly satisfied the first two elements of this test: he has alleged that SLF committed a tortious act outside New York and that his cause of action arises from that act. SLF argues, however, that Seiden has not alleged that SLF's tortious act outside New York "caused an injury to a person or property in New York." *LaMarca*, 735 N.E.2d at 886. "[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Bank Brussels*, 171 F.3d at 791 (quoting *Hermann v. Sharon Hosp., Inc.*, 522 N.Y.S.2d 581, 583 (2d Dep't 1987)). "The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (alteration omitted) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)). "In the context of a commercial tort, where the damage is solely economic, the situs of commercial injury is where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred." *CRT Invs., Ltd. v. BDO Seidman, LLP*, 925 N.Y.S.2d 439, 441 (1st Dep't 2011); *see also Bank Brussels*, 171 F.3d at 792 ("In the case of fraud or breach of fiduciary duty committed in another state, the critical question is thus where the first effect of the tort was located that ultimately produced the final

economic injury."). "The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Whitaker*, 261 F.3d at 209 (citation omitted); *see also, e.g., Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) ("The suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes." (alteration omitted) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 38 (2d Cir. 2010))).

Viewing the complaint and affidavits in the light most favorable to Seiden, the Court concludes that Seiden has not adequately alleged that the "original event which caused the injury" occurred in New York. *Whitaker*, 261 F.3d at 209 (citation omitted). Under New York law, this "original event" is either (1) SLF's preparation and transmission of an audit opinion allegedly containing misrepresentations or (2) SCLI's reliance upon the alleged misrepresentations in the audit opinion. Seiden has not adequately alleged that either of these events occurred in New York. First, SLF "produced" the audit opinion in its offices in in Toronto, Canada. Goldberg Aff. ¶ 14. Seiden does not dispute that SLF performed the audit in Canada; indeed, Seiden's complaint attaches the audit opinion, which lists "Toronto, Ontario" as the address of the audit. Compl. Ex. B at 2.[2] Nor does Seiden allege that SLF delivered the audit opinion, or communicated the results of the audit, to SCLI in New York. Rather, it appears that SLF delivered the audit opinion to SCLI in one of three places: (1) Toronto, where the opinion was "produced," Goldberg Aff. ¶ 14, (2)

---

[2] It is also possible that the audit was performed, in part, in China, where SCLI's hog farms are located. *See* Compl. ¶ 6. However, the complaint alleges that one reason SLF's audit was deficient was that SLF "did not make a single on-site visit." *Id.* ¶ 24. For purposes of this motion, the Court thus assumes that SLF did not perform the audit in China.

7

Nevada, where International was incorporated prior its combination with Expedite, *see* Compl. ¶ 6, or (3) Delaware, where Expedite and was incorporated, *see* Compl. ¶ 6. Accordingly, to the extent that SLF's performance and delivery of its allegedly deficient audit is viewed as the "original event which caused the injury" for purposes of Section 302(a)(3)(ii) jurisdiction, Seiden has not sufficiently alleged that this event occurred in New York. *Whitaker*, 261 F.3d at 209 (citation omitted); *see, e.g.*, *McBride v. KPMG Int'l*, 24 N.Y.S.3d 257, 260 (1st Dep't 2016) (holding that a New York court lacked personal jurisdiction under Section 302(a)(3)(ii) over an auditor based in the United Kingdom, where the plaintiffs alleged that the auditor negligently performed an audit in the United Kingdom); *CRT Invs.*, 925 N.Y.S.2d at 440–41 (holding that a New York court lacked jurisdiction over an out-of-state auditor under Section 302(a)(3), where the auditor performed an allegedly deficient audit in the Cayman Islands, because the auditor's "alleged failure to appropriately perform its audit services" did not occur in New York).

Second, Seiden has not adequately alleged that SCLI relied upon SLF's alleged misrepresentations in New York. As Seiden correctly notes, a number of courts in the Second Circuit have determined that a "plaintiff's reliance in New York on defendant's misrepresentation fixes the situs of the injury in New York." *Palace Expl. Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 435 (S.D.N.Y. 1998) (collecting cases). In *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980), for example, New York plaintiffs purchased grape vines from a defendant located in California, who promised that the vines were healthy. *Id.* at 898. The Second Circuit held that the plaintiffs' injury was "immediately felt" in New York for purposes of Section 302(a)(3) jurisdiction because, *inter alia*, New York was where the plaintiffs "were located when they received the misrepresentations, and where the vines were to be shipped." *Id.* at 900. Here, however, the complaint and affidavits contain no allegations regarding SCLI's location at the time

8

that it received or relied upon the audit opinion. As discussed above, it appears that SCLI received the audit opinion in either Toronto, Nevada, or Delaware. *See* Compl. ¶ 6; Goldberg Aff. ¶ 14. Moreover, Seiden does not allege that SCLI was in New York when it relied upon the audit opinion, whether in preparing the private placement financing memorandum or in its other activities. Thus, if SCLI's reliance upon SLF's alleged misrepresentations is viewed as the situs of injury under Section 302(a)(3)(ii), Seiden has failed to allege that this event occurred in New York. *See, e.g., Miller*, 967 F. Supp. 2d at 696 (holding that plaintiffs, a group of investors in a Nevada corporation, failed to establish personal jurisdiction under Section 302(a)(3)(ii) over the corporation's independent auditor, who had its sole office in Utah, where an allegedly deficient audit was performed in either Utah or in China and where the plaintiffs relied on the auditor's alleged misrepresentations in Massachusetts, not in New York).[3]

Seiden argues that the Court nonetheless has personal jurisdiction over SLF under Section 302(a)(3)(ii) because some of SCLI's *investors* resided in New York and made their investments from New York. *See* Seiden Aff. ¶ 2. This argument is flawed in several respects. First, "[i]t is well-settled that 'residence or domicile of the injured party within New York is not a sufficient predicate for jurisdiction' under section 302(a)(3)." *Troma*, 729 F.3d at 218 (alteration omitted) (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 402 N.E.2d 122, 126 (N.Y. 1980)). Second, this action was not brought by SCLI's investors: it was brought by SCLI's receiver, who

---

[3] *Cf., e.g., Rx USA Int'l, Inc. v. Superior Pharm. Co.*, No. 04-CV-5074 (TCP), 2005 WL 3333843, at *1 (E.D.N.Y. Dec. 7, 2005) (relying on *Hargrave* to conclude that a New York court had jurisdiction over a Massachusetts law firm and accounting firm who allegedly misrepresented the lawfulness of a company's business practices in SEC forms, where the plaintiff alleged that it "received the misrepresentations" in New York); *Palace Expl. Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 436 (S.D.N.Y. 1998) (relying on *Hargrave* to conclude that the "situs of injury" was New York, where the plaintiff alleged that it was in New York when it received and relied upon an out-of-state defendant's alleged misrepresentations regarding an Oklahoma oil well).

9

claims that SCLI was *itself* the victim of tortious conduct when it received, and relied upon, misrepresentations in SLF's audit opinion. It is thus SCLI's own reliance upon the audit opinion—and not any subsequent reliance of its investors—that constitutes the "original event which caused the injury" under Section 302(a)(3)(ii). *Bank Brussels*, 171 F.3d at 791. Accordingly, the fact that SCLI's investors resided in New York, or even that these investors may have relied upon SCLI's statements regarding the audit opinion while in New York, provides no basis for concluding that the "original event" causing SCLI's injury occurred in New York. *See, e.g., CRT Invs.*, 925 N.Y.S.2d at 441 ("Plaintiff's claim that it was sold the investment in New York is irrelevant, because the injury did not arise out of its purchase of the investment here, but, rather, out of [the auditor's] alleged failure to appropriately perform its audit services [outside New York].").

In sum, the Court lacks specific jurisdiction over SLF under Section 302(a)(3)(iii).[4]

## CONCLUSION

For the foregoing reasons, SLF's motion to dismiss the complaint for lack of personal jurisdiction is granted, and the complaint is dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at Docket No. 16.

SO ORDERED.

Dated: June 14, 2017
       New York, New York

Ronnie Abrams
United States District Judge

---

[4] Because the Court concludes that it must dismiss this action for lack of personal jurisdiction, it need not address SLF's alternative bases for dismissal, including that venue is improper or that service was not sufficient.

10